**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

PERTRICEE HOLLINGTON,

                     Plaintiff,                **REPORT AND RECOMMENDATION**

    v.                             20-cv-6151 (JMA) (ST)

CDM FEDERAL PROGRAMS CORPORATION

                     Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

Before this court is a motion by Defendant to dismiss a portion of Plaintiff's operative

complaint and transfer venue on the remaining claims.  For the reasons detailed below, I

recommend Defendant's motion be granted in part and denied in part.

## BACKGROUND

    **I.**      **Facts**

Unless otherwise specified, the following facts are taken from the allegations in

Plaintiff's complaint.

Plaintiff Pertricee Hollington, an African American resident of New York State, was an

employee of Defendant CDM Federal Programs Corporation, which is incorporated in

Massachusetts, with its principal place of business in Massachusetts. Pl. Sec. Am. Compl. ¶¶ 1,

6-8, ECF No. 18.  CDM has six offices throughout New York State and is registered with the

New York Secretary of State to conduct business in New York. *Id.* at ¶ 6.  CDM contracts with

FEMA for projects across the United States. *Id.* at ¶ 10.  Plaintiff worked as a project inspector

for CDM, which involved being assigned to disaster areas and sent to the locations of natural disasters. *Id.* at ¶¶ 7, 13, 15.

In September of 2017, CDM was assigned a contract to provide services related to Hurricane Harvey's damage in Texas. *Id.* at ¶ 16.  Plaintiff was assigned to work as an inspector to work on that project and was deployed to Texas. *Id.* at ¶¶ 16-17.

Plaintiff received training in Austin, Texas from approximately August 5, 2018 to August 28, 2018. *Id.* at ¶ 18.  Then, from approximately August 29, 2018 to July 31, 2019, he worked as a site inspector in Houston, Texas. *Id.* at ¶ 19.  In September of 2018, Plaintiff was subjected to racially motivated harassment by a co-worker, Rick Lamb. *Id.* at ¶ 22.  Plaintiff complained about the incident to both Defendant CDM and FEMA. A CDM senior program manager, Gary Pannozzo, called Plaintiff and informed him that others had complained about Lamb's racially motivated treatment of Plaintiff. *Id.* at ¶ 24.  Plaintiff alleges that Mr. Pannozzo then asked him to not discuss his complaint with FEMA; however, Plaintiff had already done so prior to the call. *Id.* at ¶ 26.  FEMA investigated the incident and confirmed that Plaintiff was the victim of racially motivated harassment. *Id.* at ¶ 23.  It is Plaintiff's contention that CDM was upset the issue was brought to FEMA's attention and retaliated against him for his complaint to FEMA. *Id.* at ¶ 27.

As a result of his complaint, Plaintiff alleges, he was demoted to a different role. *Id.* at ¶ 28.  At the time of the incident with Mr. Lamb, Plaintiff had been a member of the critical infrastructure group at CDM, which he claims is highly respected and prestigious. *Id.*  Plaintiff says that despite his emphatic and explicit statements that he did not want his role to change, CDM demoted him, though he does not say what role he was demoted to. *Id.* at ¶ 30.

Meanwhile, he claims, Mr. Lamb was transferred to a different office in Texas but was kept in the same role, and not demoted. *Id.* at ¶ 29.

In September of 2018, Plaintiff filed a charge of discrimination with the EEOC against CDM, alleging that it unlawfully demoted him in retaliation for his complaint to FEMA. *Id.* at ¶ 31; Def. Br., Ex. A, ECF No. 19-3.  He says after this, the retaliation from Defendant increased. *Id.*

Plaintiff was denied a promotion to a Program Delivery Manager ("PDMG") after his EEOC complaint. *Id.* at ¶ 32.  PDMGs are paid significantly more than project inspectors, their assignments are longer than project inspectors, and the jobs involve less "on the…feet" time than project inspector positions. *Id.* at ¶ 33.  Sometime between late 2018 and January of 2020, Plaintiff applied to several PDMG openings across the country including in New York State and New York City. *Id.* at ¶¶ 35-36, 43.  Plaintiff was particularly interested in these positions because of his desire to work close to his home in Suffolk County, N.Y., and Plaintiff not only applied to these positions but also reached out to CDM personnel responsible for assignments to express his desire to work in those particular jobs. *Id* at ¶ 43.  Plaintiff completed a course to become a PDMG and obtained a certificate showing that he was well-qualified for the position. *Id.* at ¶ 37.  He also had "years of experience" which included working in roles directly analogous to the PDMG role. *Id.*  Plaintiff claims the reason he was not given any of the PDMG openings was because of his complaints and due to racial discrimination. *Id.* at ¶ 38.

To support that claim, Plaintiff alleges that he is aware of several individuals who did receive the PDMG openings, none of whom were Black and, to his knowledge, none of whom made complaints of discrimination or retaliation. *Id.* at ¶ 39.  He also claims that all the individuals who received the PDMG positions during the time Plaintiff sought them had less

relevant experience than him. *Id.* at ¶ 40.  One white successful PDMG applicant joined CDM in August of 2018 and had no prior FEMA experience at all. *Id.*

Another PDMG position Plaintiff sought was in Missouri.  He did not receive that position either; a different individual was promoted to that role. That individual had less FEMA work experience than Plaintiff, was white, and to Plaintiff's knowledge, had not made complaints of being the victim of discrimination or retaliation. *Id.* at ¶ 41.

In the Spring of 2019, as his job in Texas was coming to an end, Plaintiff received an email from CDM sent to him and others detailing numerous available upcoming jobs, including some in New York, Puerto Rico, and the Virgin Islands. *Id.* at ¶ 45.  It is unclear if these jobs included the PDMG jobs already described.  Plaintiff "expressed interest" in several of the positions, but CDM did not assign him to those positions, he believes in retaliation for his complaints. *Id.* at ¶ 46.

Plaintiff contends that the pattern of retaliation and discrimination continued into mid-2019, when he was one of the last inspectors at CDM to receive an assignment after finishing a prior site inspection, even though there were numerous job sites available to assign him to. *Id.* at ¶ 44.  As a result, he spent July to October 2019 at his home in New York without an assignment. *Id.* at ¶ 47.  He was ultimately assigned to a job site in Missouri, which he claims to be one of the least desirable jobs to which to be assigned. *Id.* at ¶ 48.  He believes the delay in assignment and his eventual assignment to an undesirable job site was unlawful retaliation. *Id.* at ¶¶ 43, 48.  He also claims that while at the Missouri job site, he received less overtime than other co-workers as retaliation. *Id.* at ¶ 49.

Plaintiff alleges that his supervisor at CDM manufactured false complaints against him to manufacture a pretext for terminating him. *Id.* at ¶ 50.  The supervisor allegedly told his

4

superiors that a FEMA agent had complained about Plaintiff's performance at the Missouri job site, but the FEMA agent cited told Plaintiff that he had never made such a complaint. *Id.* at ¶¶ 51-53.

Throughout 2019, Plaintiff submitted multiple complaints to CDM's human resources department and, on January 24, 2020, he submitted an additional charge of discrimination to the EEOC. *Id.* at ¶ 54; Def. Br., Ex. B, EC No. 19-4.  In April of 2020, Plaintiff was terminated, allegedly in retaliation for his continued complaints. *Id.* at ¶ 55.  He claims CDM has continued to falsely disparage and defame him and has "blackballed [Plaintiff] from FEMA work" but he does not provide any details about what specific actions Defendants allegedly took. *Id.* at ¶ 57. He has been unable to find comparable work since his termination. *Id.* at ¶ 58.  On May 14, 2021, Plaintiff received a notice of right to sue from the EEOC. *Id.* at ¶ 59.

In this suit, Plaintiff seeks relief for unlawful retaliation under the New York State Human Rights Law, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act, and unlawful discrimination under § 1981 and Title VII of the Civil Rights Act,

**LEGAL STANDARD**

### I.    Motion to Dismiss

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the Plaintiff's complaint contains a legally cognizable claim made up of allegations that, if proven, would show that the Plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  *Twombly* and *Iqbal* command that all elements of the Plaintiff's claim must be plausibly alleged in the complaint, such that the

complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the Court "must accept all factual allegations [in Plaintiff's complaint] as true and draw all reasonable inferences in favor of the non-moving party." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980 at *3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted) (*adopted by Giambrone v. Meritplan Ins. Co.,* 13-CV-7377, 2017 WL 2303507 (E.D.N.Y. May 24, 2017)).

## II.    Venue

A civil action may be brought in (1) the judicial district in which the defendant resides; (2) the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought under (1) or (2), it may be brought in any district in which any defendant is subject to the Court's personal jurisdiction. 28 U.S.C. § 1391(b). Courts are required to construe venue strictly. *Olberding v. Illinois Cent. R.R.,* 346 U.S. 338, 340 (1953). "Substantial" within 28 U.S.C. §1391(b) is a higher standard than the minimum contacts test for personal jurisdiction, requiring significant events or omissions material to the Plaintiff's claim to have occurred in the district in question. *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir. 2005). If a district court finds venue is not appropriate in that district, it shall dismiss or, if it be in the interest of justice, transfer the case to any district where it could have been brought. 28 U.S.C. § 1406(a).

## DISCUSSION

**I.    Plaintiff's New York State Human Rights Law Claim Should Not Be Dismissed As A Matter of Law, As Some Acts of Alleged Retaliation Occurred in New York**

Defendant first argues that Plaintiff's claim of unlawful retaliation in violation of the New York State Human Rights Law must be dismissed because the alleged retaliatory conduct took place in Texas and Missouri and, as such, the NYSHRL does not apply.  I deal with this argument first, as the legal cognizability of New York State law claims affects the venue inquiry.

The NYSHRL makes it unlawful for an employer, defined as "all employers within the state," to "retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because or he she has filed a complaint…" 15 N.Y. Exec. L. §§ 292(5), 296(7).  Practices forbidden by the NYSHRL include racial discrimination. *See gen. id.* at §296.  The NYSHRL also contains an "extraterritorial" provision which extends its application "to certain acts committed outside" New York State. *Id.* at § 298-a.

It is true that the Second Circuit and intermediary New York State courts have found that the NYSHRL does not "provide a private cause of action to New York residents discriminated against outside of New York by foreign corporations." *Harte v. Woods Hole Oceanographic Ins.,* 495 Fed. Appx. 171, 172 (2d Cir. 2012) (citing *Sorrentino v. Citicorp,* 302 A.D.2d 240 (1st Dep't 2003) (collecting cases).  Defendant is a Massachusetts corporation.  That means Plaintiff ordinarily could not sue under the NYSHRL for many of the retaliatory acts he alleges, including his demotion in his role in Texas, his assignment to an undesirable worksite in Missouri, and receiving less overtime at the job site in Missouri.  However, unlawful acts outside New York by a foreign corporation are covered if they "affected the terms, conditions, or privileges of employment in New York." *Curto v. Med. World Communs., Inc.,* 388 F. Supp. 2d 101, 107 (E.D.N.Y. 2005) (citing *Sherwood v. Olin Corp.,* 772 F. Supp 1418, 1426 (S.D.N.Y. 1991)).

Here, Plaintiff also pleads retaliation regarding jobs in the corporation's New York offices.  He claims in his complaint that he applied to PDMG positions at Defendant's New York offices in January and July of 2019 and was denied those positions due to unlawful retaliation for the events that occurred while on other job sites. *See* Pl. Compl. ¶ 43, ECF No. 18.  He also claims in the spring of 2019, he "expressed interest in several…positions, including the positions in New York, Puerto Rico, and the Virgin Islands," which he was denied as retaliation for his complaints, filed as a result of his treatment in Texas and Missouri. *See id.* at ¶ 46.

The New York State Human Rights Law does cover acts committed in New York State against New York State residents by a foreign corporation. *See Curto,* 388 F. Supp. 2d at 106 ("Here, it is undisputed that none of the Defendants is either a New York resident or a domestic corporation. Thus, Plaintiff's [NYSHRL] claim is viable only if she alleges that the discriminatory act occurred in New York.").  An allegedly retaliatory act of denying a New York State resident a job at an office in New York State occurs in New York State.  Therefore, these facts give rise to a legally cognizable claim under the NYSHRL.  But the fact that Plaintiff's employment in New York was also allegedly affected by the retaliation and discrimination he suffered in Texas and Missouri brings those facts into the ambit of the NYSHRL as well.

Defendant's arguments to the contrary do not sway the Court. Defendant rests its argument on a construction of the complaint as only alleging discriminatory and retaliatory acts that took place in Texas and Missouri. *See* Def. Br., 5-10, ECF No. 19-1.  But it ignores the fact that the complaint pleads specific retaliatory acts in New York and that the denial of Plaintiff's employment opportunities in New York were alleged to have been caused by Plaintiff's complaints made in Texas and Missouri.  It is the fact that this retaliation occurred in New York that brings those facts under the ambit of a NYSHRL claim and the fact the denial of job

opportunities in New York is alleged to have been because of acts in Texas and Missouri, which permits those facts to be part of the NYSHRL claim as well.

Plaintiff, however, is incorrect in his brief that his own residence in New York and the fact that he felt the effects of the retaliation while at his home in New York is enough to bring it under the ambit of the NYSHRL.  The impact test Plaintiff cites is a test for whether non-residents of New York may claim the protection of the NYSHRL, not residents. *See* Pl. Opp. Br., 11, ECF No. 19-6; *Hoffman v. Parade Publs.,* 15 N.Y.3d 285, 289 (2010).  To apply that test to residents in the way Plaintiff has would be to extend the NYSHRL's reach to any retaliatory act committed anywhere against a resident of New York by a foreign Defendant simply because Plaintiff was at home when he got the news, in direct contradiction of clear contrary precedent set by the Second Circuit and the New York State courts.  Instead, for the NYSHRL to apply to a foreign corporation for acts against a New York States resident, the allegedly retaliatory act must have occurred in New York or have affected the terms, conditions, or privileges of employment in New York to bring it under the authority of the NYSHRL.  Plaintiff residing at home in New York when receiving news of an adverse employment action is not enough.

Thus, Plaintiff's NYSHRL are legally cognizable, though they still must be plausibly alleged to survive a Rule 12(b)(6) motion to dismiss.  I do not reach that issue because I find Plaintiff has not plausibly alleged that venue is appropriate in this District.

## II.    Plaintiff Has Not Plausibly Alleged Venue in the Eastern District of New York

Plaintiff's venue statement within his complaint is one line, that merely says, "Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred in Suffolk County, NY." Pl. Sec. Am. Compl. ¶ 4, ECF

No. 18.  Such a statement is conclusory, and requires facts pleaded in the complaint to plausibly show it to be true.

Within the complaint, Plaintiff says he resides in Suffolk County. *Id.* at ¶ 5.  But the location of Plaintiff's home is irrelevant to whether substantial events or omissions giving rise to the complaint happened in the Eastern District of New York.

As to that question, Plaintiff alleges that during his employment he was retaliated against by Defendant in several ways, one of which was the denial of job opportunities he was qualified for in New York. *See* Pl. Sec. Am. Compl., ¶¶ 35-40, 43, 46 ECF No. 18.  Such a retaliatory denial of job opportunities within a federal judicial district would be a significant event giving rise to Plaintiff's claims of retaliation and discrimination.

While Defendant claims that significant events only occurred in Texas and Missouri, that is not true.  Moreover, even if significant events did occur in districts in those states, venue may be proper in more than one district and a district may be a proper venue even when a more substantial portion of the events occurred in another district. *Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs.,* 04-CV-1852, 2005 WL 696897, 2005 U.S. Dist. LEXIS 4746, at *19 (S.D.N.Y. Mar. 24, 2005) (citing *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir. 1992); *Neufeld v. Neufeld,* 910 F. Supp. 977, 986 (S.D.N.Y. 1996)).  The question in a § 1391(b)(2) inquiry is merely whether significant events giving rise to the claim occurred in the district, not whether the *most* significant events have occurred in that district.  A retaliatory denial of a job by the Defendant is a significant event in a retaliation case, and it is clear from Plaintiff's complaint that, for this reason, venue is appropriate somewhere in New York.

However, Plaintiff does not plead with any specificity where the events occurred in New York that gave rise to his retaliation complaints.  He says the positions he was denied "included

several PDMG positions in New York" and were "pursued to be close to home." Pl. Sec. Am. Compl. ¶¶ 35, 36, ECF No. 18.  He says he applied to PDMG positions "in New York City, as well as other positions in New York City." *Id.* at ¶ 43.  He also claims he "expressed interest" in several positions in "New York, Puerto Rico, and the U.S. Virgin Islands." *Id.* at ¶ 46.  But this is insufficient to show venue in the Eastern District of New York.

§ 1391(b)(2) is not state-specific, it is district-specific: "A civil action may be brought in *a judicial district in which* a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).  New York State includes four federal judicial districts, and New York City includes two.  Without Plaintiff specifically alleging he applied to and was unlawfully denied jobs in the Eastern District of New York by Defendant, the Court cannot find there is venue here, even if there may be venue somewhere in New York.

Plaintiff also argues in his brief that he satisfies 28 U.S.C. § 1391(b)(1) such that venue is appropriate in the Eastern District of New York.  That portion of the venue statute says, "A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  Plaintiff claims that, "The relevant inquiry for venue purposes is to the entire state, not just this district." Pl. Opp. Br., 22, ECF No. 19-6.  But that is incorrect. § 1391(b)(1) says venue is appropriate in a *judicial district* where any Defendant resides, not any judicial district within the state in which Defendant resides.  In a case with multiple defendants, if all were residents of New York State, Plaintiff could pick a judicial district that any one of those defendants resided in to file his complaint.  But here, with one defendant, Plaintiff could only bring the action in the Eastern District of New York, under § 1391(b)(1), if Defendant resided in this district.

Residence for a corporation under the venue statute is defined by which judicial districts the Defendant would be subject to personal jurisdiction in. *See* 28 U.S.C. §§ 1391(c)(2), (d).

There are two types of personal jurisdiction: general and specific. Courts have general jurisdiction over a corporate defendant, except in truly exceptional cases, where it is incorporated or maintains its principal place of business. *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014). According to Plaintiff's complaint, Defendant is incorporated in Massachusetts with its principal place of business in Boston, Massachusetts. Pl. Sec. Am. Compl. ¶ 6, ECF No. 18. Therefore, there is no general personal jurisdiction over Defendant in the Eastern District of New York and the only way Plaintiff could claim Defendant resides there, would be through showing specific personal jurisdiction not just in New York State, but in the Eastern District of New York.

Specific personal jurisdiction over a defendant exists where the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum." *Daimler,* 571 U.S. at 127 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Plaintiff notes that Defendant has an office in Woodbury, New York, which is located in the Eastern District of New York. Pl. Opp. Br., 22, ECF No. 19-6. But for there to be specific personal jurisdiction, and thus for Defendant to reside in the E.D.N.Y. for the purposes of the venue statute, Plaintiff's claims would have to arise out of that office. Nowhere in Plaintiff's complaint does he specifically allege he worked at that office or that Defendant retaliated or discriminated against him by denying him jobs in that office, such that his claims would arise out of that contact with the E.D.N.Y. Therefore, Plaintiff has not plausibly alleged that Defendant resides in the E.D.N.Y.

Because Plaintiff has not plausibly alleged substantial events or omissions occurred in the E.D.N.Y. or that the Defendant resides in the E.D.N.Y., he has not shown venue in this District is

appropriate. As venue has not been shown to be proper here, this Court should not reach the

12(b)(6) analysis on the individual claims, allowing the proper venue the opportunity to do so.

**III.    Defendant Has Not Met Its Burden to Show Transfer Is Appropriate**

Defendant next argues that transfer to the Southern District of Texas is appropriate here

because venue in the E.D.N.Y. is improper and the Southern District of Texas is where

substantial claim-related events occurred, including Plaintiff's filing of his EEOC charge and his

filing of a separate FLSA claim in the District Court. Def. Br., 17, ECF No. 19-1.

"When a case is brought where venue is improper, a district court may 'if it be in the

interest of justice transfer such case to any district or division in which it could have been

brought.'" *Cold Spring Harbor Lab. V. Ropes & Gray LLP,* 762 F. Supp. 2d 543, 560 (E.D.N.Y.

2011) (citing 28 U.S.C. §1406(a)).  The decision to transfer this case is within the discretion of

the District Court. *Minette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir. 1993).  Factors to aid a

court in deciding whether to transfer under 28 U.S.C. §1406 include convenience to the parties

and witnesses, and practical considerations including access to proof and expense. *Sheet Metal

Workers' Nat'l Pension Fund v. Gallagher,* 669 F. Supp. 88, 92 (S.D.N.Y. 1987). The party

seeking transfer, here Defendant, bears the burden of establishing that both the transfer is

warranted and the balance of convenience weighs clearly in its favor. *Id.*

Here, I do not believe Defendant has met that burden. Defendant's reasons for transfer to

the Southern District of Texas include that the EEOC charge and FLSA action were filed there,

that Plaintiff worked on the Houston, Texas job site the longest, that the racial discrimination by

a co-worker occurred there, that the alleged pattern of retaliation began there, and that unnamed

(with the exception of the head of FEMA) relevant witnesses should principally be found in

Texas. Def Br., 17-20, ECF No. 19-1.

13

However, Plaintiff chose a New York forum and notes that, because he lives in New York and is currently unemployed, "a transfer to Texas would be significantly inconvenient for him." Pl. Opp. Br., 24, ECF No. 19-6.  Additionally, though Plaintiff has not alleged venue in E.D.N.Y., there were substantial acts which occurred in New York State, and transferring the case to Texas would deny Plaintiff the ability to re-plead with specificity venue as to one of the New York judicial districts.  Defendant has not given any names of specific witnesses located in Texas who would be inconvenienced by a New York action.  And, Plaintiff has New York law claims which are legally cognizable, which would be better adjudicated in a New York court than a Texas court.

While Defendant has established that this suit could be brought in the Southern District of Texas, I do not believe it has met its burden to show the balance of convenience clearly weighs in its favor.

**IV.     Plaintiff Should Be Permitted the Opportunity to Amend His Complaint**

As I do not find transfer is warranted, Plaintiff's complaint must be dismissed for lack of proper venue. *See* 28 U.S.C. § 1406(a).  However, I recommend it be dismissed without prejudice, and Plaintiff be granted the opportunity to amend it, should he be able to assert with specificity that the acts of alleged retaliation or other substantial events or omissions occurred in the Eastern District of New York such that venue would be appropriate.  If venue exists here and the defect is merely with the language of the existing complaint, justice so requires leave to amend. *See* F.R.C.P. R. 15(a)(2).  While I understand Defendant's frustration with Plaintiff being given the opportunity to amend his complaint for a third time, "'a dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum' and, thus, is without prejudice." *Japan Press Serv. v. Japan Press Serv.,* No. 11-CV-5875, 2013

WL 80181, 2013 U.S. Dist. LEXIS 2163 (E.D.N.Y. Jan. 2, 2013) (quoting *Arrowsmith v. United Press Intern,* 320 F.2d 219, 221 (2d Cir. 1963)).

However, if venue factually does not exist in the Eastern District of New York, Plaintiff, should he choose to re-file, must file in a district where there is either district-level personal jurisdiction over the Defendant or in a federal district where substantial events giving rise to the claim occurred.

## CONCLUSION

Based on the foregoing, I recommend the Court grant Defendant's motion to dismiss for lack of venue as to Plaintiff's entire complaint, that the dismissal be without prejudice, that Plaintiff be granted leave to amend his complaint, and that the Court deny Defendant's motion to transfer venue.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to file written objections. Failure to file timely objections shall constitute a

waiver of those objections both in the District Court and on later appeal to the United States

Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir.

2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                  _____/s/_____
                                                  Steven L. Tiscione
                                                  United States Magistrate Judge
                                                  Eastern District of New York

Dated: Central Islip, New York
       March 6, 2022